## CITY OF CALAIS *vs.* CHARLES R. WHIDDEN.

*Money had and received. Authority and duty of city officials.*

When one has money of a plaintiff, which in equity and good conscience he ought to pay or refund, the law raises a promise on his part that he will do so. Being under a moral obligation to pay, and the law implying a promise to pay, a demand is unnecessary.

The representative of a town or city in the legistature is under no official obligation to attend to the prosecution or aid in the adjustment of its claims against the state for reimbursement. Neither is the city solicitor. For such services the representative or the city solicitor is entitled to a reasonable compensation.

The city treasurer, as such, has no authority to contract with either as to the rule of compensation for extra official services to be rendered by a representative or solicitor of such city.

ON REPORT.

ASSUMPSIT, by writ dated August 17, 1871, declaring upon a count for money had and received, with a specification of the demand to be proved under it, as $1304.03, received of the State of Maine, as found due from the state to the city of Calais, less $15.58, leaving a balance of $1288.45 and interest thereon from its reception by the defendant due from him to said city.

The defendant pleaded the general issue with a brief statement denying that the action was instituted by competent authority; alleging also that there was no demand made upon him for the money before the suit was brought, and setting up a settlement of the claim, before suit, between the defendant and the city treasurer, and a ratification of that settlement by the plaintiffs who have

never rescinded the same, nor returned the sum by them received of the defendant thereon.

The plaintiffs proved that they had a claim against the state, for military supplies furnished during the war, amounting to thirteen hundred and four dollars and three cents, which was audited by the governor and council of 1870, agreeably to a legislative resolve, passed February 26, 1869, and that sum allowed; and that it was paid by the state treasurer's draft to the order of Mr. Whidden, who cashed the same at the Calais National Bank, upon which it was drawn. The defendant introduced a bill for services rendered to the city by him, consisting of two items, one for collecting this $1304. of the state, for which he charged $652, under an agreement with the treasurer to collect it "at the halves;" and the other for services and expenses in making up rolls and lists of soldiers for allowance by the state commissioners upon the assumption of municipal war-debts, and collecting $25,458.33, at two and a half per cent., $636.45, making the total of his account $1288.45. In 1870 Mr. Whidden represented Calais in the legislature till February 25, 1870, when he resigned. He was city solicitor during the municipal year of 1869–70. When Mr. Whidden returned from Augusta he took with him the state treasurer's check for this $1304.03, and mentioned it to the city treasurer, and said he offered it to that official. The mayor and four of the five aldermen were soon after called together at Mr. Whidden's office and there his bill was presented and allowed, the treasurer being present, and subsequently the mayor drew an order upon the treasurer for the sum total of Mr. Whidden's account and he passed that order for $1288.45 and his own check for $15.58 to the treasurer in full for the $1304.03 received of the state as aforesaid. At the close of the fiscal year the finance committee examined and approved the treasurer's account, including this item. The treasurer testified that when he told Mr. Whidden to charge half what was to be procured from the state for his services he (the witness) thought the claim did not exceed two hundred dollars; he had retained

no recollection that it was for so large a sum as it was, though the original disbursements for the soldiers were made through him, as treasurer, he having held that office over twenty years.

He also said that Mr. Duren, the only alderman absent when the bill was presented at Mr. Whidden's office, was the only member of the finance committee who examined the treasurer's account at the close of the year.

The city government elected in the spring of 1870, repudiated the agreement and adjustment aforesaid with Mr. Whidden, and the city solicitor of that year told him a suit would be commenced unless the sum, he obtained in Augusta, was paid into the treasury. Efforts to refer the dispute failing, the present proceedings were instituted. Upon the evidence adduced, the question was submitted to this court whether or not, upon the facts disclosed, the action could be maintained; if so, it was to stand for trial; otherwise, the plaintiffs were to be nonsuit.

The plaintiffs contended that there was a fixed salary attached to the office of solicitor, which covered all the legal services rendered by Mr. Whidden to the city while he held that position; and that his going before the executive council was simply as the representative of Calais at Augusta.

By the ordinances, no warrant upon the treasurer should be drawn by the mayor unless the bill which it is to pay is approved by the joint committee of accounts. No member of the common council was present at the meeting of the aldermen at Mr. Whidden's office; nor did any of the members of the common council approve the bill; nor did the city clerk, who is *ex officio*, the clerk of the board of aldermen attend, nor keep any record of the meeting at Mr. Whidden's office.

*F. A. Pike* and *J. & G. F. Granger* for the plaintiffs.

So soon as the defendant received the plaintiff's money, in the shape of a check payable to his own order, an action of assumpsit would lie against him for not paying into the treasury as required by the city charter and ordinances. He was liable so soon as he took the check in that form. *Floyd* v. *Day*, 3 Mass., 403; *Cof-*

*fin* v. *Coffin*, 7 Maine, 298; *Bliss* v. *Thompson*, 4 Mass., 488; *Mason* v. *Waite*, 17 Mass., 560 ; *Hall* v. *Marston*, Id., 575 ; *Concord* v. *Delaney*, 58 Maine, 309.

*George Walker* and *Charles R. Whidden* for the defendant.

The demand made by the city solicitor upon Mr. Whidden was an unauthorized and therefore, ineffectual one, and did not justify the institution of this suit.

If the city determined to rescind, or attempted to do so, the settlement with Mr. Whidden, his checks and the city order should have been returned to him.

A previous demand should have been made, by competent authority. *Emerson* v. *McNamara*, 41 Maine, 565 ; *Bisbee* v. *Ham*, 47 Maine, 543 ; *Jones* v. *Hoar*, 5 Pick., 285 ; 2 Greenl. on Ev., § 117.

The city treasurer, being the custodian of the public funds, to whom all other persons receiving the city's money are, by the charter and ordinances to pay them, it follows that his receipt is a good discharge of the liability, and that he is the proper person with whom to settle.

Mr. Whidden did not receive this money from the state by virtue of any official relations between him and the city, but merely as an attorney employed by the treasurer (in behalf of the city) to collect the funds and account for them to him, which was done, to the satisfaction of all concerned. If the treasurer has wronged the city his bond is ample security that the wrong shall be rectified.

APPLETON, C. J. The question presented for our determination is whether upon the evidence offered by the plaintiffs irrespective of that in the defence, they are entitled to recover.

The plaintiff town having claims against the state for reimbursement, the legislature by resolve authorized the same to be audited by the governor and council and an order to be drawn for the amount found due. The defendant, who was then the city solicitor of the plaintiff's and their representative in the legisla-

ture, appeared before the auditing board to procure the allowance of the plaintiff's claims. They were allowed to the amount of $1304.03, for which sum the state treasurer drew an order on the Calais National Bank in favor of the defendant, who indorsed the same and received the amount.

The defendant, then, had the funds of the plaintiff city in his hands, for which he was bound to account. He received the order as their agent to pay to them. The money received upon the order was the plaintiff's, and this action is brought to recover the same.

I. It is objected, that the action cannot be maintained, because there was no previous demand. But where one is proved to have money of the plaintiffs in his hands, which, *ex æquo et bono*, he ought to refund or pay over, the law will presume he promised so to do and the jury are bound to find accordingly. Being under legal and moral obligation to pay, the law implies a promise so to do. No demand therefore was necessary. *Stetson* v. *Howe*, 31 Maine, 353; *Hall* v. *Marston*, 17 Mass., 575.

If a demand was necessary, there is evidence tending to show that a demand was made on the defendant and that he was notified that a suit would be commenced in case of a failure to pay.

II. The authority to commence the suit is denied. But the appearance of the plaintiffs' attorney has not been called for seasonably. If it had been, it appears by record evidence, that the plaintiffs directed by vote the institution of this suit, and nothing indicates on their part any desire that its prosecution should cease.

The plaintiffs, therefore, have made out a *prima facie* case. But certain questions have been raised which it is expedient now to determine.

The defendant, whether as the representative of the plaintiff city, or as their solicitor, was under no official obligation to attend to the prosecution or to aid in the adjustment of their claims against the state for reimbursement. For his services in this behalf he is entitled to a just and reasonable compensation.

The city treasurer, as such, had no authority to agree upon the

rate of compensation for extra official service, and nothing is shown from the records of the plaintiff corporation that he was in any way authorized to make any agreement such as is alleged. Its validity would be established only by subsequent ratification, if that can be shown.      *Action to stand for trial.*

Cutting, Walton, Barrows, Danforth and Peters, JJ., concurred.