**W. L. FLETCHER, Plaintiff in Error,**

v.

**BANK OF MEEKER, a corporation,
Defendant in Error.**

No. 39513.

Supreme Court of Oklahoma.

Sept. 18, 1962.

Rehearing Denied Oct. 16, 1962.

P. D. Erwin, Chandler, for plaintiff in error.

W. Ryan Russell, W. A. Lybrand, Oklahoma City, for defendant in error.

IRWIN, Justice.

Plaintiff commenced an action to recover a money judgment against A. D. Coots and for the possession of certain cattle from Coots and the Bank of Meeker, hereinafter referred to as Bank. After summons were served and before answer date, all the cattle in controversy were sold at a public sale and the proceeds from the sale were deposited in the account of Coots at the Bank of Meeker. Thereafter, a default judgment was entered against Coots. On trial before a jury, Bank's demurrer to plaintiff's evidence was sustained and the action was dismissed against Bank. Plaintiff appealed from the judgment overruling his motion for new trial.

### PLEADINGS and FACTS

On June 21, 1960, the action was commenced. Plaintiff alleged that between August 14, 1958, and December 7, 1959, Coots became indebted to him for feed for the sustenance of the cattle involved; that there was due and owing for said feed the sum of $1385.40; that Bank had actual and constructive notice that plaintiff was furnishing the feed and acquiesced and consented to the transactions; that plaintiff has a lien

on the cattle belonging to Coots which is prior and superior to the lien of Bank; that Coots and Bank are in possession of the cattle.

After service of summons was had and on June 23, 1960, all the cattle were sold at a public sale. The proceeds from the sale were deposited in the account of Coots with Bank. Coots paid Bank the amount due on some notes that he owed to Bank and Bank released the chattel mortgage lien that it had on the cattle. On July 5, 1960, the account of Coots was practically depleted.

Bank's answer, filed September 7, 1960, denied that it had any specific knowledge of the contents of plaintiff's petition. Bank alleged that it had loaned money to Coots in 1956; that Coots had executed to it notes which were secured by a chattel mortgage covering the cattle in question; that the notes had been paid and a release of the mortgage lien had been given.

Plaintiff alleged in his reply that after the commencement of this action, Bank, with full notice and knowledge of the lien and claim of the plaintiff, wrongfully converted the cattle and the proceeds of the sale; that Bank jointly and unlawfully with Coots sold the cattle and delivered them to sundry purchases; that Bank and defendant, conspiring together, wrongfully used, appropriated and wrongfully converted the proceeds from the sale of the cattle.

The evidence discloses that the chattel mortgage from Coots to Bank was filed and recorded prior to the time plaintiff furnished feed to Coots. Plaintiff discussed with Mr. Russell, President of Bank, the account that Coots had with Bank, and Mr. Russell advised him that Coots was making payments on the notes due Bank as provided in the notes. Later Mr. Russell again advised plaintiff that Coots was making payments on the notes due Bank.

Plaintiff admitted that he knew about the sale of the cattle and that he took some sale bills to his feed store to advertise the sale as he wanted the cattle to bring as much as possible.

## CONCLUSIONS

Title 4 O.S.1961 § 192, provides that if a person furnishes or provides to the owner of domestic animals feed for the sustenance of such animals, said person shall have a lien on the animals for the amount due for the feed.

Although plaintiff may have had a lien on the cattle by reason of furnishing feed, it does not necessarily follow that such lien was superior to the lien of Bank which had a valid and recorded chattel mortgage lien on the cattle prior to the time the feed was furnished.

The priority of liens was considered in National Bank of Commerce v. McDaniel, 71 Okl. 6, 174 P. 286, wherein we held:

"The lien of a valid recorded chattel mortgage will take precedence over the subsequently acquired lien of a person furnishing feed to the owners of the animals embraced in said mortgage, unless such feed was furnished to the owner with the consent of the mortgagee."

In Cather v. Spencer, 55 Okl. 511, 154 p. 1130, we held:

"A lien for feed and pasturage for cattle will take precedence over a prior recorded chattel mortgage, where the same was furnished with the consent of the mortgagee, and consent may be implied from the facts and circumstances surrounding the transaction."

See also First National Bank of Mountain View v. Wilson, 49 Okl. 370, 153 P. 172.

Applying these principles of law to the facts in the case at bar, we find there is no evidence whatsoever that Bank either requested or consented to the furnishing of the feed by plaintiff to Coots. It is true that Coots talked to Russell, President of Bank, but in these conversations, the thing that was discussed related to the account of Coots with Bank. Plaintiff never did indicate or intimate that Bank should consent to plaintiff furnishing the feed. Although Bank may have had knowledge that plaintiff was furnishing feed, such is not sufficient to show that Bank consented, nor can the

Bank's consent be implied. We therefore conclude and hold that Bank's recorded chattel mortgage lien was superior to any lien that plaintiff may have had.

When the action was originally commenced, the only action against Bank was in replevin for the recovery of the cattle. In General Finance Corporation v. Jackson, Okl., 296 P.2d 141, we held:

"An action of replevin cannot be maintained against one who is not in the actual or constructive possession of the property at the commencement of the action."

The evidence fails to disclose that Bank ever had the actual or constructive possession of the cattle or exerted any dominion over them. Although the sale of the cattle may have been made with the consent of Bank, there is no evidence that Bank participated in the sale or that anyone who represented Bank attended the sale.

██ We therefore hold that since Bank did not have either the actual or constructive possession of the cattle when the action was commenced, an action in replevin could not be maintained against Bank for recovery and possession of the cattle.

Plaintiff contends that by permitting Coots to withdraw the money deposited from the sale of the cattle that Bank is guilty of conversion; that issues in conversion actions are questions for the jury and that the trial court erred in sustaining the demurrer to plaintiff's evidence.

In considering this contention we should review the facts. This action was commenced on June 21, 1960, for the possession of the cattle. On June 23, 1960, the cattle were sold at public auction and the proceeds were deposited in Bank. Plaintiff not only had knowledge that the cattle were to be sold at public auction, but took some sale bills to his feed store to advertise the sale. The proceeds of the sale were then deposited to the account of Coots in Bank.

In discussing a bank's duty to a third person who makes an adverse claim to a deposit in the bank in the case of Sanders v. First National Bank & Trust Company of Tulsa, (Okl.) 292 P.2d 160, we said:

"* * * our legislature recognizing the precarious position in which banks were placed, when an adverse claim was made by a third party to funds such as involved in the instant case, saw fit in 1937 to pass a statute to protect banks in such cases, Title 6 Okl.Stats.Ann. § 118v. This statute provides in substance that when a third party gives notice to a bank of an adverse claim to a deposit, the bank does not have to recognize such claim until it is directed to do so by proper court order or unless a proper indemnifying bond is furnished to the bank. Under this statute it is made the duty of the adverse claimant to procure a restraining order, injunction or other appropriate process against the bank from a court of competent jurisdiction in a cause therein instituted by him wherein the person to whose credit the deposit stands is made a party and served with summons or shall in lieu thereof execute to said bank, in form and with sureties acceptable to it, a bond indemnifying said bank from any and all liability, loss, damage, costs and expenses, for and on account of the payment of such adverse claim or dishonor of the check or other order of the person to whose credit the deposit stands.

"The instant case is one of first impression to come before this court upon the question herein involved since the enactment of the above referred to statute. It seems quite clear to us that one of the purposes of this statute was to eliminate the uncertainty inherent in the rule announced in Huff v. Oklahoma State Bank [87 Okl. 7, 207 P. 963], supra, and by its enactment lay down the procedure necessary to be taken by an adverse claimant to assert his claim, thereby affording protection to both banks and their depositors from unreasonable interference with their

relationships, rights and obligations by the claim of strangers."

Title 6 O.S.1961 § 118v, above was in force and effect during the period of time involved in the instant action. Plaintiff did not comply with this statutory provision and does not contend or show why the same does not preclude him from recovering in the instant action.

We therefore hold that since plaintiff did not comply with the provisions of sec. 118v, supra, Bank was under no legal obligation to plaintiff to hold Coots' funds for plaintiff's benefit. Since it was under no obligation to plaintiff, it could not be guilty of conversion and the trial court did not err in sustaining Bank's demurrer to plaintiff's evidence.

Judgment affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JACKSON and BERRY, JJ., concur.

WELCH and JOHNSON, JJ., concur in results.