Loretta J. STEVENSON et al., Appellants,

v.

FIRST NATIONAL BANK OF WASHINGTON et al., Appellees.

No. 12800.

District of Columbia Court of Appeals.

Argued Sept. 14, 1978.

Decided Nov. 7, 1978.

**22**

Edward DeV. Bunn, Arlington, Va., for appellants.

Samuel Scrivener, Jr., and David S. Scrivener, Washington, D. C., for appellee Perpetual Federal Savings and Loan Ass'n. Walter J. Smith, Jr., Washington, D. C. for appellee Raymond S. Sczudlo. Martin S. Thaler, Washington, D. C., for appellee First Nat. Bank of Washington.

Before NEWMAN, Chief Judge, and YEAGLEY and HARRIS, Associate Judges.

NEWMAN, Chief Judge:

Appellants seek reversal of the summary judgment entered against them in favor of all defendants, contending that the trial court erred in granting summary judgment since Perpetual Federal Savings and Loan Association (Perpetual) acted without legal justification when it refused to pay out to them on demand the money held in their account. Because we find that Perpetual's actions were justified under the circumstances, we affirm.

Through its own error, First National Bank of Washington (Bank) recorded a $1000 deposit to Mrs. Stevenson's checking account as $10,000. Mrs. Stevenson noted the error on her statement dated October 16, 1975, and reported it to the Bank, but she was told by the Bank that there had

been no error. About two weeks later Mrs. Stevenson withdrew a large portion of the $9000 and deposited it in an account with Perpetual that she held jointly with her husband. The Bank discovered its error on December 16, 1975, and, through its own personnel and its attorney, demanded that the money be returned. The Bank, having traced the funds to the Stevenson's account with Perpetual, requested that Perpetual freeze their account. On December 18, 1975, Mr. Stevenson attempted to make a withdrawal from Perpetual, but Perpetual refused his request. The next day, December 18, 1975, the Bank filed suit against the Stevensons to recover the money mistakenly paid out to them and against Perpetual for an injunction restraining them from releasing the Stevensons' account pending resolution of the suit. The Stevensons and the Bank agreed to a settlement whereby the Stevensons repaid $7000 in cash and $2000 on time.

Following that settlement the Stevensons filed suit against the Bank, their attorney, and Perpetual alleging numerous causes of action sounding in tort and contract.* Chief Judge Greene granted summary judgment on all counts for the Bank and their attorney on July 19, 1977. Judge Korman granted summary judgment on all counts for Perpetual on September 26, 1977.

■ When a bank has notice of an *adverse claim to the money in one of its* depositor's accounts it attempts to determine which party has the superior right at its own peril, for it will be held liable if it pays out the account erroneously. *See Jaselli v. Riggs National Bank,* 36 App.D.C. 159, 170–71 (1911). A bank, finding itself in the position of a stakeholder between two claimants, can avoid the potential liability for making an erroneous payment by either of two methods. Either it can interplead the claimants or it can freeze its depositor's account briefly to permit the adverse claimant to file suit. *Gender v. Sibley State Bank,* 62 F.Supp. 805, 815 (N.D.Iowa 1945). "Under the majority rule the only duty owed by the bank to the plaintiff was, after notice, to hold up the . . . deposit for such time as would enable the plaintiff by proceeding diligently and promptly to tie up the deposit by legal action." *Id.* Upon notice of a claim a bank can delay in paying out of the contested account for only a reasonable and brief period. *See Huff v. Oklahoma State Bank,* 87 Okl. 7, 207 P. 963 (1922) (upholding a jury finding that nine days was too long). If the innocent bank may incur liability by paying out erroneously on what appears to be a justified claim, and cannot avoid liability by honoring its deposit contract, it ought not to have to risk liability when it preserves the situation long enough for a judicial resolution of the primary dispute to be initiated. In this regard it makes no difference whether the parties file suit or the bank interpleads them. *Goldstein v. Riggs National Bank,* 148 U.S.App.D.C. 137, 459 F.2d 1161 (1972).

■ A number of states have enacted statutes codifying the common law. *See generally* Annot., 62 A.L.R.2d 1116 (1958). The District of Columbia has such a statute, D.C.Code 1973, § 26–203, *see also Goldstein v. Riggs National Bank, supra,* but, by its terms, it applies only to banks and trust companies, not to savings and loan associations. Over the years savings and loan associations have come to operate and to be perceived less as specialized joint ventures for the purpose of financing construction and more as financial institutions. Savings and loan associations receive and disburse funds under contractual arrangements much like a bank's deposit contract, and they extend credit the same way banks do. Consequently, like a bank or any other similar financial institution, a savings and loan association can find itself in the position of

---

* Appellants' complaint and brief on appeal may be read as stating numerous causes of action including breach of contract, tortious inducement to breach a contract, conversion, trespass to chattels, several counts of defamation, malicious prosecution in a civil proceeding, abuse of process in a criminal proceeding, and con-tractual duress. We have examined appellants' assertions and we are not persuaded that the orders of summary judgment were granted improperly or are inapposite to any of the causes of actions that appellants appear to state. We hold that summary judgment was properly granted as to all these claims as well.

a stakeholder between adverse claimants and it ought to enjoy the same protection from liability when seeking judicial resolution of that dispute. While the District of Columbia statute is not by its terms applicable to savings and loan associations, we are satisfied that the common law rule as reflected in such cases as *Huff v. Oklahoma State Bank, supra,* and *Gender v. Sibley State Bank, supra,* is a sound one. Thus, we hold that when a savings and loan association, credit union or similar banking institution receives notice of an adverse claim to a deposit, said institution may freeze that deposit for a brief, reasonable period of time so as to permit the filing of litigation, either by interpleader or other appropriate civil litigation, to resolve the adverse claims.

In this case the Bank notified Perpetual of its claim to the funds held by Perpetual for the Stevensons, and it instituted legal action on its claim the following day. In light of the fact that Perpetual chose a reasonable course of action in preserving the situation briefly while the Bank instituted its suit, we hold that Perpetual is not liable for refusing to honor Mr. Stevenson's withdrawal order.

*Affirmed.*